Good morning. May it please the court, Eitan Pellett, I'm a certified law student on behalf of the petitioner, Mr. Jose Orlando Rosa. Before I begin, I'd like to reserve two minutes of our time for rebuttal, which my colleague, Mr. Chase Booth, will be handling. Thank you. Mr. Orlando Rosa respectfully requests that this court grant his petition and remand this case to the BIA because the BIA failed in four distinct ways. First, the BIA failed to adjudicate, in the first instance, Mr. Orlando Rosa's family-based claim. Second, with regard to the withholding-based claims that it did adjudicate, the BIA failed to engage in a cumulative analysis. Third, the BIA failed to engage in an objective assessment of the 2019 State Department Country Conditions Report. And finally, the BIA failed in its CAT analysis. Moving to my first point. In its relatively short three-page order, the Mr. Orlando Rosa's family-based claim, which he clearly raised at every step of this case thus far. This court in Rios made clear that where an individual raises even a mixed motive claim where the claims are related, in the Rios case, it was a religious-based claim and a family-based claim, where the board failed to adjudicate the family-based claim, this court remanded so that it could do so in the first instance. So the question is, the family-based claim for withholding properly before us, if he did not raise it in the application for relief? Your Honor, what's more important here, our position is that it was raised and acknowledged in his briefs before both the IJ and the board. And indeed, both the IJ and the board acknowledged it, at least acknowledged it. But what happened is that the board then failed to adjudicate it as this court has required. And opposing counsel points to one sentence on the fourth page of the record, the second page of the board's order, where it stated that it discerned no reason to disturb the IJ's finding with regard to the applicant's ability to establish probability of future harm on account of a protected ground. But that sentence leaves us guessing as to what it is adjudicating, and the board's decision structure indicates that that is the topic sentence of a paragraph that talks about political opinion, not a family-based claim. I think your friend on the other side essentially argues that the board considered the groups in tandem, I think is their language. Is that not what happened here? Well, if that is what happened, it would still violate what this court held in Rios, where there needed to be an independent adjudication of each of the claims raised. In Rios, as I mentioned, there was a religious-based claim and a family-based claim. And indeed, in Rios, the petitioner's father had been killed outside the church, so the issues were related, but this court required an independent adjudication. Here, there was no independent adjudication of the family-based claim. In fact, nowhere in the board's opinion does it mention the fact that almost every single member of the petitioner's family have been killed. To what extent do we look to the IJ's decision in this case with respect to the family-based claim? In this case, this court shouldn't because the board never expressly adopted the IJ's opinion. And this court has held time and time again that it only looks to the IJ's opinion where there is express adoption. In Duran-Rodriguez and in Lynn, which are the two cases that opposing counsel relied upon, there was an express adoption. Also in Garcia and a number of others. And most importantly, in the matter of Bourbon, which is the board's own opinion, it uses the language express adoption of the IJ's opinion. Because that language did not occur here, the board's opinion has to stand on its own. And with regard to the family-based claim, it did not because there was no adjudication there. And again, significantly, in fact, nowhere did the board mention the fact that in 2004, his sister was murdered. Or the fact that in 2014, his brother was murdered. And these are individuals that are part of his family, that are similarly situated, that have been killed. And if the court has no further questions on the first issue, then I'll now move to our second issue, which is with regard to the board's failure to engage in a cumulative analysis with regard to the material facts of this case. This court in Sharma and in Salgado-Sosa and a number of other cases has held that the board must engage in a cumulative analysis which looks to the cumulative effect of the Here, the board failed to engage in that cumulative analysis with regard to the political-based claim, which goes directly to his likelihood of establishing future persecution. Nowhere does it mention and connect the fact that, for example, in 2004, the year that his sister was murdered, he received a written threat at his home address in the United States. Well, but if I understood the facts, I don't think he knew who that was from. Is that correct? Well, he mentions in the record that he is, and it was his words, that he is sure that the individuals that killed his family are the same ones that were threatening him. And that's especially true with regard to the phone calls that he received, for example. But don't you think that the conditions in the country really sort of doomed those claims with regards to the cat and withholding? I mean, do we have a problem with the fact that the changed political system where now the FMLN are in charge? Well, a couple of points in response to that, Your Honor. First, we don't dispute the fact that the Civil War has ended in El Salvador, but that had no impact on the fact that his sister in 2004 was killed, his brother was killed in 2014, both of which are in the post-Civil War period. And the 2014 murder in particular was during the rule, the FMLN ruling. So again, that did not protect an individual that's similarly situated to Mr. Orlando Rosa. And so therefore, the conditions have not sufficiently changed. But doesn't that, doesn't it reflect, though, that there's less likelihood of chance that he'd be persecuted going back when you have members of, who were part of the opposition party who are now in control in the country? Well, Your Honor, that didn't protect either of his siblings, and it also has not mitigated these persecutors' interest in his life. He was threatened in 2014. Well, his siblings, what year were those siblings? I think you just said it, right? Yes, 2004 and 2014. But, so doesn't the time difference make, doesn't the passage of time since then now make a difference? Well, the three years that passed between 2014 and 2017 didn't mitigate their interest because they again called him and threatened his life. And in that threat told him... Who is they? They are the individuals that Mr. Orlando Rosa is, quote, sure are the same people that murdered his siblings. He's sure. Tell me why he's sure. And what proof do you have that they are the same? Well, in the record on page 106 and 110 and 113 are the places that he mentions it. And this is an individual that was found to be credible by the immigration judge. And so we have no reason to doubt his credibility, and his credibility is not at issue there. And in addition to him thinking so, he's basing that also on the fact that his nieces told him that they're likely the same, and his mother, his biological mother, told him that they're the same people. And so there's no reason to doubt that they're not the same individuals, especially because in those phone calls where they threatened him, they mentioned the murders. They told him, you are next. You are next in the Rosa family to die, essentially. And so, counselor, who is it that he believes are threatening him? What group? Individuals that have identified him both as a member of the Rosa family and a former FMLN member that are holding, essentially, this grudge against him. And there is... Are they associated at all with any law enforcement officials or the government in any way? Well, with regard to the withholding, that's not necessary in this case. But with regard to the CAT claim, the acquiescence standard, we believe, is met here, sort of in... What's your authority that it's not relevant to the withholding claim? You're right. I see that I'm coming a long time. May I quickly respond? I'll give you extra time. Go ahead. Well, I suppose I'll focus on the CAT claim in response to the... No, I understand on CAT, but on withholding, what's your authority? I don't know that this court has held that it must be a government actor that is persecuting them. And so, I... Okay. Thank you so much. Thank you. Counsel, is it Ms. Zida? Zida, can you pronounce your name? Zidon. Okay. May it please the court, my name is Christina Zidon, and I represent the Attorney General. I want to say a quick thank you to the professors, the students, the panel, and the court staff for permitting my video appearance today at short notice after I had a temporary health scare on Thursday. I really appreciate it. All right. And so, turning to the facts of this case, we want to address the... We want to address the four concerns brought up by opposing counsel, and also the motion for judicial notice. So, starting with the motion for judicial notice, we would ask the court... Counsel, could you please first address the concern that is raised that the BIA just didn't address the family-based claim? Not only didn't it address it, in many ways, it misconstrued it. So, could you please address that? Yeah, definitely, Your Honor. So, with the family-based claim, our position is that the family-based claim was addressed. The board mentioned it. The board held broadly that Mr. Rosa had not shown a clear probability of persecution. Counsel, we can all talk in broad terms, but here, wasn't the board specifically supposed to address the social group, and first of all, characterize it correctly, and second, address the merits? And it didn't do that, did it? Well, we believe that it did address the merits and characterize it correctly because it wasn't truly a separate claim from the political opinion claim, or at least from the former FMLN membership claim. The board did bring up the facts that the family membership claim was based on, namely, the two instances where Mr. Rosa, the two years where he received the written calls. I guess if you can point me to where the BIA did that, because I understood that the BIA construed the claim as a family-based claim, whereas the claim that was being noticed was the family involved in the FMLN. So, I think they're two distinct groups, aren't they? And so, they aren't distinct groups in the sense that Mr. Rosa, at the same time that he's making this family-based claim, is also distinguishing himself from members of his family who are living in El Salvador unharmed. Well, but here's the problem, though, with that argument, and I thought about it because I noticed it was in the briefing, but the problem is that the family who was not in the FMLN didn't die. The family that was in the FMLN were targeted and, in fact, killed. In fact, I believe at least the father, the sister, maybe the uncle, that was an important distinction, don't you think? So, the way that the, that is the distinction that Mr. Rosa is trying to make, but what the board stated is that the phone calls that Mr. Rosa received don't appear to be linked to, the phone calls that mentioned his family members who were killed, they don't appear, there's no evidence that they were linked to his political opinion, essentially. Oh, but, but the, what about his, the family-based claim, though? I understand, you know, because that's a separate claim on the political opinion, but what about the family? Did, did, I don't think they commented on that at all, did they? The board noted that he made a family-based claim, and they did, they did cite the pages of the immigration judge decision that, that also brought up the, that also adjudicated the family-based claim as well, and so we, we argue that that's sufficient for the board to have adjudicated this claim. And what's your, what's your best authority for that? And so, this court has actually held that it can review the immigration judge decision, even in the absence of a, of a matter of Burbano citation and adoption. The court has held that in, let's see, the, the court held that in Medina-Lara v. Holder, that's 771 F. 3rd 1106, whereas here the board incorporates the IJ's decision into its own without citing matter of Burbano, the court will review the IJ's decision to the extent incorporated. But, well, I guess I'm trying to figure out, the, the, the board did not explicitly adopt the IJ's decision as its own, did it? And I, I really kind of try to figure out the, there's a difference there between, there's no reason to disturb IJ's finding. So the board did not adopt the immigration judge's decision as its own. No, that is correct. And however, this court has not held that that's necessary in order to review the portions of the IJ's decision on which the board relied. And the board, on page four of the record, repeatedly references the IJ's decision. But repeatedly references it with respect to the political opinion. That is correct, but the board also cites pages of the IJ's decision that go to the family membership adjudication. And the board also brings up the threatening phone calls in 2014 and 2017, which the immigration judge considered as part of adjudicating the family-based claim. And what's your best argument why this case is distinguishable from Rios versus Lynch? So our, our best argument is that in, in Rios, that was a case where the board, or that was the case where this court held that the board misconstrued the family-based claim by really adjudicating a completely different particular social group. And this, this case, and I believe it had happened as well at the IJ level. And in this case, that's the IJ, the IJ adjudicated the family-based claim very clearly. And as well, the board cited those, cited that adjudication. And going to, going to the second argument that, that opposing counsel made about the immigration judge not cumulatively considering the claim with regard to the political opinion. One thing that, one thing that opposing counsel pointed at is that, is that he, opposing counsel argued that the 2019 report was not considered. But in fact, the immigration judge, I don't believe the immigration judge specifically cited it, but there's no evidence that it was ignored. The immigration judge recited many facts that were consistent with the 2019 report, including that freedom fair elections had taken place in 2019, and that a former member of the FMLN became president. All right, and so, and so the, and so there's no, there's no evidence that the board, there's no evidence that the board ignored, that the immigration judge, excuse me, ignored the, ignored the 2019 report. Can I ask you about the motion for judicial notice and what your position is? So our position on the motion for judicial notice is that, is that, first of all, with regard to the, with regard to the Immigration Nationality Act 8 U.S.C. 12, 1252 B.4.A. states that the court should, should, shall decide the petition only on the administrative record on which the order of removal is based. And so our, our position is that that controls and that the proper way for asserting changed country conditions is also addressed by the Immigration Nationality Act and should be done in the form of a motion to reopen. This court does have precedent on judicial notice and the, on taking judicial notice of changed country conditions, and that is a before versus INS. And in that case, the court held that conditions were so troubling, so well publicized, so similar to conditions that the non-citizen had fled from, that it, that it would take judicial notice. And here that is not the case. And so the conditions that, the conditions that Mr. Rosa have fled from have not returned to El Salvador, essentially. The Civil War has not returned. The FMLN and the government are not warring in the streets. And so he, he points at a couple of alleged political detentions in the 2022 State Department. You're fading out a little bit. Can you speak? I apologize. I'll speak up. And so the 2022 report, he refers to alleged political detentions in that report. But that, but he's, he hasn't shown that he's similarly situated to those individuals because the individuals mentioned are high profile members of the FMLN and are current members of the FMLN, whereas Mr. Rosa is a former member of the FMLN. If this court is inclined to see GFOR as similar to this case, though, we would ask as an alternative to remand that the courts, the court place this case in abeyance to permit Mr. Rosa to file a motion to reopen with, with the, with the board and make his full case there. I see that my time is up. And so, yeah. And what's, what's the, the difference in holding it in abeyance versus a remand? Because we, we actually, we actually don't believe that Mr. Rosa has made his, we don't believe that he's made a full case for this court as to remand based on judicial notice. And so what, and so what we would, but at the same time, he, at the same time, we would not object to holding this in abeyance if the court is inclined to decide that this case is more, is like, is like GFOR potentially. Okay. Does anybody else have any questions? All right. Thank you very much. Thank you. Good morning, Your Honors, and may it please the court. My name is Chase Booth, and I'm a certified law student on behalf of the petitioner, Mr. Orlando Rosa. And today I have just a couple of points on rebuttal, Your Honors. The first is that, as stated here, the BIA just simply did not expressly adopt the IJ's opinion nor invoke matter of Bourbono. And the case that the government relied upon just now in oral argument for the point that you can look to the IJ's decision, Medina Lara versus Holder, the language quoted there is exactly this. Whereas here, the board incorporated the IJ's decision without Bourbono, this court will review the IJ's decision to the extent incorporated. Now it's Mr. Orlando Rosa's position that simply citing two portions of the IJ's decision is not enough to incorporate it into the BIA order. And the BIA order here, standing alone, just simply does not have a family-based adjudication to make when there's no mention at all of Mr. Rosa's murdered family members. So if that is the case, and the BIA didn't fairly review this particular issue, do we remand? Do we remand on an open record? Do we hold it in abeyance for, as your friend across the aisle suggests? Your Honor, it would be ideal for the case to resolve as quickly as possible. And a remand, I think, is appropriate here for the BIA to just simply do its duty and adjudicate this family-based claim. Because I believe there's enough in the record here to warrant relief from removal on that. And can you respond to the question regarding the motion for judicial notice and why we should or should not grant that? Your Honor, this court should grant the motion for judicial notice because otherwise this case is ultimately frozen in time in 2019. And country conditions in El Salvador have changed sufficiently since the 2019 report. But what's your best authority for us to consider that at this point since we're supposed to look at what was before the record, in the record at the time that the decision was made by the BIA? Your Honor, I don't with me currently have good authority for that. But I can provide supplemental briefing to that effect if the court would benefit from that in terms of its decision on the motion for judicial notice. But it's petitioner's position ultimately that even if the court were to deny that motion, that there's enough information in the country conditions 2019 report to justify still withholding removal relief. Because country conditions on the floor, or on the ground in El Salvador, haven't changed sufficiently to protect individuals who are similarly situated to Mr. Orlando Rosa, like his brother who was murdered in 2014. And law has not ultimately required petitioners to understand the exact motivations and identities of their persecutors before they're granted relief from withholding. Counsel, I just want to get some clarification from you with regard to the remand request. Are we talking open remand? Are we talking just remand to the BIA to determine your client's eligibility for family-based social group? What are you asking for? A remand on that point specifically would be great, Your Honor, on the family-based claim. But also there is, in our opinion, substantial evidence in the record to compel a different conclusion with respect to the other claims that the BIA did adjudicate, namely the former FMLN and imputed political opinion claims. So if the court were willing to remand with appropriate instructions to grant relief there, petitioner would be grateful as well. All right. Thank you very much. Thank you. So first, I'd like to thank the University of San Diego School of Law for taking on this case. I really appreciate the universities and the law schools in particular for taking on these pro bono matters. And so, Mr. Schlesinger, thank you for supervising Mr. Pellet and Mr. Booth here today. And Ms. Zida, am I pronouncing it correctly? Yes, Your Honor. I want to thank you for your presentation today and I wish you good health. Thank you very much. The matter of Jose Orlando Rosa v. Merrick Garland is now submitted.
judges: MURGUIA, MENDOZA, ALBA